*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| HALEEM MCCOY, | : | |
| | : | Civil Action No. 12-7728 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | April 21, 2015 |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the motion of Haleem McCoy ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Respondent, United States of America ("Respondent"), filed a response (ECF No. 14), to which Petitioner replied (ECF No. 15). As Petitioner's reply brief contained new claims, Respondent has also filed a supplemental brief responding to those claims. (ECF No. 19). For the following reasons, the Court denies the motion.

**I. BACKGROUND**

Petitioner, Haleem McCoy, following his arrest, entered into a plea agreement with the United States on June 21, 2011. (Plea Agreement attached to ECF No. 19 as Exhibit B). Pursuant to the plea, Petitioner was charged by way of a one count information on August 1, 2011 with "knowingly and intentionally distribut[ing] and possess[ing] with intent to distribute 5 grams or more, that is approximately 56 grams, of a mixture or substance which contains cocaine base" in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B) and 18 U.S.C. § 2. (Information attached to

ECF No. 19 as Exhibit A). Within the Plea Agreement, Petitioner specifically stipulated that his offense involved fifty-six grams of cocaine base in the form of "crack" cocaine and waived his right to challenge that stipulation through appellate or collateral attack if the sentencing court accepted it. (Plea Agreement at 7).

The Plea Agreement provided Plaintiff with the following information regarding sentencing. First, the Agreement informed Plaintiff that the violation to which he was agreeing to plead "carries a statutory minimum prison sentence of 5 years, a statutory maximum sentence of 40 years and a statutory maximum fine equal to the greatest of (1) $2,000,000 or (2) twice the gross profits or other proceeds" Petitioner gained through his illegal activities. (*Id.* at 2). The Agreement also informed Petitioner that the "sentence to be imposed . . . is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act . . . and the judge's consideration of the United States Sentencing Guidelines [which are] advisory, not mandatory." (*Id.*). Petitioner was also informed that the sentencing judge "may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine." (*Id.*). The Agreement also stated that the United States Attorney's Office made no representation or promise as to what the guideline range would be or what sentence would result. (*Id.*). Finally the Agreement detailed the fines, fees, and potential period of supervised release which would accompany Petitioner's jail term. (*Id.*).

This Court held a plea hearing for Petitioner on August 1, 2011. After determining that Petitioner was able to understand the proceedings, Petitioner stated that he had had an opportunity to go over the application to enter a plea of guilty with his attorney. (Plea Hearing Transcript attached to ECF No. 19 as Exhibit C at 4). Petitioner also stated that his attorney had explained

2

the form and answered all of Petitioner's questions. (*Id.*). The Court also discussed with Petitioner his waiver of indictment, which Petitioner admitted he had signed after discussing the waiver with his attorney. (*Id.* at 5). The Court then asked whether Petitioner had been given any promises in exchange for his plea, which Plaintiff denied. (*Id.*).

This Court then turned to the consequences of Petitioner's plea. The Court explained the following:

> THE COURT: Alright. Do you understand that once you enter this plea of guilty, you cannot take it back or retract it because you don't like or agree with the sentence that [the Court] will impose? You understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: You also understand that by entering [a] plea of guilty, there will be no trial in this case where it [would have been] the burden of the Government to prove you guilty beyond a reasonable doubt. You understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: Alright. And in addition to that, have you spoken to [Defense Counsel] regarding the role of the Sentencing Guidelines?
>
> [Petitioner]: Yes.
>
> THE COURT: Alright. So you understand that those Guidelines will be used by [the Court] in an advisory capacity, but I'm not bound by those Guidelines. You understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: So any sentence, once again, that [the Court] impose[s], is a sentence [the Court] impose[s] within [its] discretion. You understand?
>
> [Petitioner]: Yes.

3

>               THE COURT:   And knowing all those things, do you wish to plead
>               guilty?
>
>               [Petitioner]:   Yes.

(*Id.* at 6-7).

The Court then discussed the Plea Agreement with Petitioner.   Petitioner admitted that he had gone over the Agreement with counsel, that counsel had explained it to him, and that all of his questions about the agreement had been answered prior to his signing the agreement.   (*Id.* at 7). The Court also noted that there was no stipulated Guidelines range, but Petitioner had stipulated to the amount of cocaine base and waived his right to contest that stipulation if accepted by the Court, which Petitioner stated he understood.   (*Id.* at 7-9).   Petitioner further stated that his attorney had explained the waiver and his appellate rights to his satisfaction.   (*Id.* at 9).

The Court then laid out the factual basis for Petitioner's plea, to which Petitioner agreed. Specifically, On May 7, 2010, Petition met an individual in Plainfield, New Jersey, in order to sell that individual crack cocaine.   (*Id.*)   That individual gave Petitioner approximately $2,500 in exchange for the cocaine.   (*Id.*).   After receiving the money, Petitioner knowingly and intentionally sold him the crack cocaine.   (*Id.* at 9-10).   The Government then represented that it could prove that the substance was in fact cocaine base with a weight of 56 grams, to which Petitioner had previously stipulated.   (*Id.* at 10).   Following the factual recitation, the Court found that Petitioner had knowingly and voluntarily entered a plea of guilty and entered judgment.   (*Id.* at 10-11).

As part of his entrance of a guilty plea, Petitioner and his counsel both signed an application to enter a plea of guilty on August 1, 2011.   (Application attached to ECF No. 19 as Exhibit D at 7-8).   In that application, Petitioner specifically certified the following:

4

> My lawyer has informed me, and I understand, that the maximum punishment which the law provides for the offense(s) charged in this . . . information is
>
> A MAXIMUM OF 40 years imprisonment and a fine of $2 million for the offense(s) charged in Count(s) 1. My lawyer has further explained, and I understand that there is . . . a mandatory minimum punishment of 5 years imprisonment and no . . . mandatory minimum fine . . .
>
> I understand that if I plead GUILTY to Count(s) 1 of the . . . information, I face a maximum sentence on those Count(s) of 40 [years] imprisonment, plus an aggregate fine of $2 million.

(*Id.* at 3). The application also contained a certification that Petitioner understood that "the sentence to be imposed upon me is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act of 1984" and that in deciding what sentence to impose, the judge would be "required to consider the maximum and minimum prison terms, fines and terms of supervised release recommended under the Sentencing Guidelines." (*Id.* at 4). The application also stated that Petitioner understood that "the Sentencing Guidelines are advisory, and [the] sentencing judge must also consider the other statutory factors identified in 18 U.S.C. § 3553(a) in deciding what sentence to impose." (*Id.*)

In the application, Petitioner also certified that he understood that the sentence for his case would not be calculable until after the Presentence Report had been completed. (*Id.*). Petitioner further stated that he understood that he would have no right to withdraw his plea based on the grounds that counsel had made an inaccurate prediction as to the applicable Guidelines range at sentencing. (*Id.* at 5). Petitioner and his counsel also wrote upon the application that the substance of the plea agreement was that he would "plea[d] to [a] 1 count information [with a

5

sentence] between 5 and 40 [years]."[1]  (*Id.*)  Petitioner then certified that

> I hereby declare that no officer or agent of any branch of government, (Federal, State, or Local), nor my lawyer, nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any other form of leniency if I plead GUILTY.  My lawyer has explained, and I understand, that only the judge may decide what punishment I shall receive, and that if any person has told me otherwise, that person is not telling the truth.

(*Id.* at 4).  Finally, the application contained the following certification: "[m]y lawyer has explained to me, and I understand, that if the judge accepts [this] GUILTY plea under the plea agreement, . . . the judge is not bound to follow the other terms of the plea agreement, including the stipulations recommending that a particular sentence or sentencing range is appropriate or that a particular provision of the Guidelines does or does not apply."  (*Id.* at 6).

This Court sentenced Petitioner on December 15, 2011.  Prior to sentencing, the Probation Office released the Presentence Investigation Report, which included a finding that Petitioner was subject to career offender status under U.S.S.G. § 4B1.1, and that Petitioner's applicable guideline range was therefore 188 to 235 months.  (PSR ¶ 39, 64, 70, 100).  At sentencing, Petitioner's counsel did not argue that career offender status didn't apply, but instead argued that a downward departure should be granted due to Petitioner's medical problems arising out of several gunshot wounds, and on the basis that his prior criminal history overstated the seriousness of Petitioner's past conduct.[2]  (Sentencing Transcript attached to ECF No. 19 as Exhibit E at 4-8).  This Court,

---

[1] This statement is handwritten.  It is unclear whether Petitioner or his counsel wrote the statement, but Petitioner certified in his application that the foregoing information was true.  (*See* Application at 5, 7).

[2] Counsel's main argument as to the overstated history concerned two convictions arising in 2004.  While Petitioner was sentenced as to both convictions on the same day, they were

after hearing the arguments of counsel, found that the PSR's calculated range was appropriate, and sentenced Petitioner to the bottom of the applicable Guidelines advisory range with a sentence of 188 months.  (*Id.* at 12-14).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

---

separated by an intervening arrest.  (*See* Sentencing Transcript at 10).

**B. Analysis**

Petitioner raises three arguments in support of his assertion that his conviction should be vacated: that the conduct for which he was convicted has been decriminalized, that counsel was ineffective for failing to object to the conviction on the basis of its alleged decriminalization, and that counsel was ineffective for failing to advise Petitioner that he was potentially subject to being sentenced as a career offender. Because Petitioner's first ineffective assistance of counsel claim relies on his claim that his conduct has been decriminalized, those two claims will be discussed in conjunction with one another under the rubric of the Court's discussion of ineffective assistance.

Preliminarily, this Court notes that Petitioner, in his reply brief, also briefly raises two other claims without argument or explanation: that the Government did not provide him notice prior to his being sentenced as a career offender pursuant to 21 U.S.C. 851, and that this Court "relied on [Petitioner's] still pending state indictment to depart below 188 months even though in [Petitioner's] view, his criminal history grossly overrepresented the seriousness of his criminal history." (ECF No. 15 at 3). To the extent that Petitioner wishes to argue that the Government was required to provide him notice of intent under 21 U.S.C. 851(a)(1) before he could be sentenced as a career offender under the guidelines, that argument is patently without merit. *See U.S. v. Day*, 969 F.2d 39, 48 (3d Cir. 1992) ("subsection 851(a)(1) requires the government to file a pretrial information only if it intends to seek a sentence beyond the maximum provided by the statute . . . the government is not required to file a pretrial information to subject a defendant to sentencing as a career offender under U.S.S.G. § 4B1.1."); *see also United States v. Sanchez*, 61 F. App'x 813, 815 (3d Cir. 2003); *Mass v. United States*, No. 11-2407, 2014 WL 6611498, at *5 (D.N.J. Nov. 20, 2014).

As for the argument regarding overstatement of criminal history, the Court did not downwardly depart as Petitioner suggests, and to the extent that his argument was meant to imply that the Court improperly considered his pending charges in finding him to be a career offender, that argument is clearly belied by the record. (*See* Sentencing Transcript at 12-14, finding the PSR calculations accurate and finding Petitioner to be a career offender without reliance on Petitioner's pending charges, with the Court specifically noting that the Court was not present to punish Petitioner for all of his behavior, but rather to "address [the] offenses for which [Petitioner] has been convicted."). In any event, a claim that the Sentencing Court misapplied the Sentencing Guidelines by not granting a downward departure under the Guidelines is not cognizable in a 2255 motion absent a showing that the misapplication presents a constitutional issue. *See United States v. Ruddock*, 82 F. App'x 752, 758 (3d Cir. 2003) (holding that where Petitioner has not established that the error presents a constitutional issue, "[e]rrors in the implementation of the Sentencing Guidelines are generally not cognizable in a collateral attack); *see also United States v. Cepero*, 224 F.3d 256, 267-68 (3d Cir. 2000), *abrogated in part on other grounds*, *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012).

1.  **An evidentiary hearing is not required**

Before addressing Petitioner's substantive claims, the Court notes that an evidentiary hearing is not required in this case. The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). Where the record, as supplemented by the trial judge's

9

personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicates that the petitioner is not entitled to relief as a matter of law, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing only necessary where the petitioner's claims are not conclusively resolved by the record). For the reasons explained below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law. An evidentiary hearing is therefore not required.

**2. Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel was ineffective. Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, defendant must first show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Second, Petitioner must show that counsel's deficient performance prejudiced his defense such that counsel's errors were so serious as to "deprive [Petitioner] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In determining whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Thus, petitioner must show that his counsel's representation "fell below an objective

standard of reasonableness" considering all the circumstances. *Id.* Reasonableness in this context is determined based on the facts of the particular case, viewed as of the time of conduct alleged to have been ineffective. *Id.* Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if Petitioner shows that counsel was deficient, he must still affirmatively demonstrate prejudice to his defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

**a. Petitioner's claim that counsel was ineffective in failing to object on the basis of the decriminalization of Petitioner's conduct**

Petitioner's main argument raised in his original petition, rather than in his reply brief, was that counsel failed to object to his conviction for an offense which had been decriminalized. Petitioner argues that the Supreme Court decriminalized the distribution or possession with the intent to distribute crack cocaine in *United States v. DePierre*, 131 S. Ct. 2225 (2011). Petitioner's argument fundamentally misreads the Court's decision in *DePierre*. In *DePierre*, the Court was called upon to interpret the meaning of the term "cocaine base" in 21 U.S.C. 841. *Id.* at 2227-28. Specifically, the Court was asked to determine whether the term referred "generally to cocaine in its chemically basic form or exclusively to what is colloquially known as 'crack

11

cocaine.'" *Id.* The Court concluded that "the most natural reading of the term 'cocaine base' is 'cocaine in its base form' [which is] found in crack cocaine, freebase, and coca paste. On its plain terms, then, 'cocaine base' reaches more broadly than just crack cocaine." *Id.* at 2231.

The *DePierre* Court thus *expanded* the reach of the term cocaine base so that the term referred "not just [to] 'crack cocaine' but [to] cocaine in its chemically basic form" regardless of the mixture in which that basic form is found. *Id.* at 2237. Thus, the statute criminalizes not only possession and distribution of crack cocaine, but also any other mixture which contains the chemically basic form of cocaine. The Court in no way decriminalized the possession or distribution of crack cocaine. *See, e.g., Potts v. Ebbert*, 519 F. App'x 116, 117 (3d Cir. 2013) (In *DePierre*, the Supreme Court held that the term "cocaine base" . . . includes both crack cocaine and cocaine in its chemically basic form."). Even had Petitioner not misread *DePierre*, Petitioner specifically stipulated that his offense involved "56 grams of cocaine base, that is 'crack' cocaine, a controlled substance." (Plea Agreement at 7). Petitioner likewise waived his right to collaterally attack that stipulation, and thus it is binding upon him here. *See United States v. Perry*, 142 F. App'x 610 (3d Cir. 2005) (collateral waivers enforceable); *see also United States v. Khattak*, 273 F.3d 557, 558, 560 (3d Cir. 2001). Indeed, Petitioner does not actually dispute that stipulation here, but simply asserts that he was convicted for distribution of crack and not cocaine base. In any event, the acts for which Petitioner was convicted have <u>not</u> been decriminalized, and thus *DePierre* provides no basis for the vacatur of Petitioner's conviction.[3]

Petitioner's claim that counsel was ineffective for failing to object on the basis that his

---

[3] Petitioner's arguments are further hindered by the fact that *DePierre* has not been held retroactively applicable. *See Yates v. Bledsoe*, 501 F. App'x 111, 114 (3d Cir. 2012).

12

conduct was not criminal under the statute must, in turn, also fail. The case law is clear that counsel is not ineffective for failing to raise a meritless argument. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("[c]ounsel cannot be ineffective for failing to raise meritless claims"); *United States v. Berry*, 314 F. App'x 486, 489 (3d Cir. 2008); *Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998). Here, the argument Petitioner argues was not raised, *i.e.* that his conviction was based on a non-criminal act, is clearly erroneous and without merit. As such, counsel's failure to raise that argument cannot form the basis of a claim for ineffective assistance of counsel. Petitioner has thus failed to show that he is entitled to habeas relief on this ground.

**b. Petitioner's claim that counsel was ineffective in advising him at the plea stage**

Petitioner, in his reply brief, also argues that counsel was ineffective for failing to advise him that he could be sentenced as a career offender, and that he would not have pled guilty had he been so advised. In the context of a guilty plea, counsel must provide a defendant with sufficient information "to make a reasonably informed decision whether to accept a plea offer." *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013), *cert. denied*, --- U.S. ---, 134 S. Ct. 1340 (2014). The Third Circuit has identified sentencing exposure as an important factor in such a decision as "'[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). An erroneous sentencing prediction by counsel, however, "'is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted.'" *Id.* (quoting *Shedrick*, 493 F.3d at 299).

13

The Third Circuit has recognized

> that the maximum sentence authorized by law is often so extraordinarily long that few defendants other than "career criminals" plead guilty with the expectation that the maximum sentenced applies to them. However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.

*United States v. Mustafa*, 238 F.3d 485, 492 n. 5 (3d Cir. 2001); *see also Shedrick*, 493 F.3d at 299. The conjectures of defense counsel "are irrelevant where the written plea agreement and the in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Shedrick*, 493 F.3d at 299.

Here, the record clearly establishes that Petitioner was informed of both the maximum exposure he faced at sentencing and of the Court's discretion in sentencing him. Both the Plea Agreement and the application to enter a plea of guilty clearly state that Petitioner was informed that his maximum potential penalty included forty years imprisonment. Both documents, and this Court during sentencing also clearly indicated that Petitioner's sentence was left to the discretion of the sentencing judge subject to the sentencing factors and the advisory Sentencing Guidelines range. Indeed, during the plea colloquy, Petitioner was specifically asked whether he had read, understood, and discussed with his counsel both the Agreement and the plea application which specifically provide his minimum and maximum sentencing exposure as well as statements explaining the Court's discretion at sentencing. Petitioner specifically stated on the record that he had read them, understood them, and had discussed them with counsel, who had answered any questions he may have had. Based on the Plea Agreement, application to enter a plea of guilty,

14

and this Court's plea colloquy, it is clear that Petitioner was clearly informed of his maximum sentencing exposure of forty years, and about the Court's discretion in sentencing him. As such, Petitioner cannot show that counsel was ineffective for failing to advise him regarding his potential career offender status, even if this Court accepts as true Petitioner's assertions about counsel's failure to so advise him. *Mustafa*, 238 F.3d at 492 n. 5; *Shedrick*, 493 F.3d at 299. Petitioner's claims of ineffective assistance of counsel are therefore without merit and his motion to vacate his sentence must be denied.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a proceeding under §2255 unless Petitioner has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner's claims are all without merit, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall issue.

### IV. CONCLUSION

For the reasons stated above, petitioner's motion is DENIED, and no certificate of appealability shall issue. An appropriate order follows.

                                                      <u>s/ *Susan D. Wigenton*</u>
                                                      **SUSAN D. WIGENTON**
                                                      **UNITED STATES DISTRICT JUDGE**